IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BUTTE DIVISION

| | |
|---|---|
| GARY ORAM, JR.,<br><br>    Plaintiff,<br><br> vs.<br><br>THE CITY OF DILLON, CETH<br>HAGGARD, JEREMY ALVAREZ,<br>and JACOB JOHNSON,<br><br>    Defendants. | CV 15-47-BU-BMM-JCL<br><br><br>FINDINGS AND<br>RECOMMENDATION, and ORDER |

Before the Court are Defendants City of Dillon, Ceth Haggard, and Jeremy

Alvarez's Fed. R. Civ. P. 56 motions for summary judgment. For the reasons

stated the Court recommends the motions be granted and this action be dismissed.

## I. Background

In the early morning hours on January 30, 2014, Plaintiff Gary Oram, Jr.

was in Dillon, Montana. Oram was intoxicated and was attempting to open a door

on a parked police car. A bystander, Jacob Johnson, approached Oram to deter

him from accessing the car, and the two got into a physical altercation.

Defendants Jeremy Alvarez and Ceth Haggard, Dillon Police Officers,

arrived at the scene of the altercation between Oram and Johnson. Although Oram

1

indicates he was not personally aware of exactly what happened, he believes that at some point the Officers physically beat him by either hitting or kicking him. Officers Alvarez and Haggard arrested Oram for assaulting Johnson, and Oram complains that they should have instead arrested Johnson.

Following his arrest Oram was taken to the Beaverhead County Jail and also to Barrett Hospital and Healthcare in Dillon, Montana. Based on his conduct at the hospital Oram was charged with disorderly conduct. He was later convicted for disorderly conduct and for the misdemeanor assault against Jacob Johnson.

Oram also references a separate incident in Dillon involving Johnson which occurred about a week after Oram's incident. Johnson was involved in another altercation with an individual named Hans Sevalstad. And similar to the result of Oram's encounter with Johnson, law enforcement officers arrested Sevalstad for allegedly assaulting Johnson. Oram contends the two incidents demonstrate that law enforcement officers engaged in a custom or practice of unreasonably believing Johnson's descriptions of events and wrongfully arresting the victims of Johnson's attacks.

Oram asserts he sustained injuries during the events that transpired on January 30, 2014. He later underwent several surgeries to address a hematoma affecting his right ear.

Oram advances four legal claims for relief.  First, he alleges Defendants are liable for "conspiracy."  Specifically, he contends law enforcement officers were obligated to arrest Johnson for his assault on Oram, and later for Johnson's assault on Sevalstad.  (Doc. 35 at 24.)  Instead, the officers exercised the "power of conspiratorial coercion" and wrongfully arrested Oram and Sevalstad.  (*Id*.)

Second, Oram alleges Haggard and Alvarez employed excessive force to arrest him in violation of his rights protected under the Fourth Amendment to the United States Constitution.  He alleges a witness, Sam Hayden, saw the officers beating Oram.

Third, Oram alleges Haggard and Alvarez unlawfully arrested him without probable cause in violation of both the Fourth Amendment and his due process rights protected under the Fourteenth Amendment.  He contends Johnson was the aggressor who assaulted Oram.

Finally, Oram alleges Defendants are liable for violation of his equal protection rights guaranteed under the Fourteenth Amendment.  He asserts Haggard and Alvarez discriminated against him and treated him differently than Johnson because they arrested Oram, and not Johnson.

## II.    Applicable Law - Summary Judgment

Federal Rule of Civil Procedure 56(a) entitles a party to summary judgment

"if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  A movant may satisfy this burden where the documentary evidence produced by the parties permits only one conclusion.  *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 251 (1986).  Once the moving party has satisfied his burden, he is entitled to summary judgment if the non-moving party fails to designate by affidavits, depositions, answers to interrogatories, or admissions on file, "specific facts showing that there is a genuine issue for trial."  *Celotex Corp. v. Cattrett*, 477 U.S.  317, 324 (1986).

In deciding a motion for summary judgment, the Court views the evidence in the light most favorable to the non-moving party, and draws all justifiable inferences in the non-moving party's favor.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Betz v. Trainer Wortham & Co., Inc.*, 504 F.3d 1017, 1020-21 (9th Cir. 2007).

Additionally, because Oram is proceeding pro se the Court must construe his documents liberally and give them "the benefit of any doubt" with respect to Defendant's summary judgment motion.  *Frost v. Symington*, 197 F.3d 348, 352 (9th Cir. 1999).  *See also Erickson v. Pardus* 551 U.S. 89, 94 (2007).

## III. Discussion

### A. Local Rules 7.1(c)(1) and 56.1(a)(4)

As a preliminary matter, Oram complains that Haggard and Alvarez filed their summary judgment motion without first contacting him to find out if he opposed the motion in violation of L.R. 7.1(c)(1). But Haggard and Alvarez represented in their motion that they attempted to contact Oram for 4 days through emails and voice mail messages. They later filed an addendum to their motion advising that Oram responded to them by email on August 29, 2016, stating he opposed their summary judgment motion. Therefore, the Defendants complied with the substance of L.R. 7.1.

Next, Oram complains that Defendant City of Dillon filed its summary judgment motion without emailing to him a word processing version of its statement of undisputed facts in violation of L.R. 56.1(a)(4). But the purpose of the rule is just to make it easier for the opposing party to prepare a statement of disputed facts which must "set forth verbatim the moving party's" statement of undisputed facts. L.R. 56.1(b)(1). Oram successfully filed his statement of disputed facts which included the text of the City of Dillon's statement of undisputed facts. (Doc. 118.) Therefore, the issue is moot and of no consequence.

**B.   42 U.S.C. § 1983**

Oram's claims alleging Defendants violated his federal constitutional rights are advanced under 42 U.S.C. § 1983.  Section 1983 permits claims under federal law against a local governmental entity, or a local official or employee.  "To make out a cause of action under section 1983, plaintiffs must plead that (1) the defendants acting under color of state law (2) deprived plaintiffs of rights secured by the Constitution or federal statutes." *Williams v. California*, 764 F.3d 1002, 1009 (9th Cir. 2014) (quotation and citation omitted).

**1.   Probable Cause**

Oram claims Haggard and Alvarez arrested him without probable cause in violation of his Fourth Amendment rights.  But for the reasons discussed, the Court finds probable cause existed.

A claim asserting that a law enforcement officer unlawfully arrested a person "is cognizable under § 1983 as a violation of the Fourth Amendment, provided the arrest was without probable cause[.]" *Gravelet-Blondin v. Shelton*, 728 F.3d 1086, 1097 (9th Cir. 2013) (quoting *Lacey v. Maricopa County*, 693 F.3d 896, 918 (9th Cir. 2012) (en banc)).  "Probable cause exists if the arresting officers 'had knowledge and reasonably trustworthy information of facts and circumstances sufficient to lead a prudent person to believe [there was a fair

probability] that [a citizen] had committed or was committing a crime.' " *Id.*, 728 F.3d at 1097-98 (quoting *Maxwell v. County. of San Diego*, 697 F.3d 941, 951 (9th Cir. 2012)); *Hart v. Parks*, 450 F.3d 1059, 1066 (9th Cir. 2006) ("fair probability"). An officer may rely upon information provided by other law enforcement officers (*United States v. Hensley*, 469 U.S. 221, 231 (1985)), and may rely upon inadmissible evidence, "hearsay and upon information received from informants, as well as upon information within the [officer's] own knowledge that sometimes must be garnered hastily." *Hart*, 450 F.3d 1059, 1066 (quoting *Franks v. Delaware*, 438 U.S. 154, 165 (1978)).

Haggard and Alvarez arrested Oram for committing the criminal offense of assault against Johnson in violation of Mont. Code Ann. § 45-5-201 which defines the offense as follows:

> (1) A person commits the offense of assault if the person:
> (a) purposely or knowingly causes bodily injury to another;
> (b) negligently causes bodily injury to another with a weapon;
> (c) purposely or knowingly makes physical contact of an insulting or provoking nature with any individual; or
> (d) purposely or knowingly causes reasonable apprehension of bodily injury in another.

The events of the physical altercation between Oram and Johnson, viewed in the light most favorable to Oram, and the information that Haggard and Alvarez possessed which led to their decision to arrest Oram for assault are, in substance,

largely undisputed and are set forth in Haggard and Alvarez's investigative reports.[1]

At around 1:30 a.m. on January 30, 2014, Oram, who was intoxicated from consuming alcohol, was attempting to open the back door of a police car parked in Dillon, Montana. Jacob Johnson observed Oram at the police car, approached him, and told him not to break into the car. Johnson grabbed or pushed Oram away from the car. Oram disregarded Johnson, told Johnson to leave him alone, and continued to try to open the car door. Johnson again told Oram to stop. Johnson grabbed or pushed Oram away from the car a second time. Witnesses told Haggard and Alvarez that at that point "Oram aggressively grabbed [Johnson] and yelled 'I'm a fucking Navy seal, I'll fucking kill you.'" (Doc. 95-2 at 2 of 3.) Oram held Johnson's arms. Johnson told Alvarez he felt that Oram could act on his threat, so Johnson head-butted Oram's face to get Oram to let go. Johnson then left the scene.

At the time of the conflict between Johnson and Oram, Haggard and

---

[1]Haggard and Alvarez submitted and rely upon their investigative reports they prepared relative to Oram's arrest. (Docs. 95-2 and 95-4.) They each filed an affidavit confirming that the investigative reports are true, accurate, and complete, and the reports describe the events leading up to Oram's arrest. (Doc. 96 at ¶ 15; Doc. 97 at ¶ 15) Specifically, Haggard affirms that his investigative report contains the information on which he relied to establish probable cause to believe Oram committed an assault. (Doc. 96 at ¶ 26.)

Alvarez were on duty on foot patrol in the Metlen Bar in Dillon. The bar was near the location where Johnson confronted Oram, and Johnson came to their location at the bar to notify them of the incident with Oram. Haggard and Alvarez observed that Johnson's forehead was bleeding, and blood was dripping down his face.

Haggard and Alvarez went outside the Metlen Bar to investigate and they found Oram. Oram was "acting very aggressively, and was angry and threatening." (Doc. 96 at ¶ 29; Doc. 97 at ¶ 28.) Haggard directed Oram to sit down, but Oram did not obey his command.

Johnson was outside with Haggard and Alvarez at that point. Oram tried to push past Haggard to get to Johnson. (Doc. 95-2 at 1 of 3.) Oram attempted to "go after" Johnson. (Doc. 95-4 at 1 of 4.) At that point Haggard and Alvarez decided they needed to restrain Oram to "prevent him from attacking [Johnson]." (Doc. 96 at ¶ 29; Doc. 97 at ¶ 28.) They each grabbed Oram's arms and took him down to the ground. They put handcuffs on Oram and placed him in the back of the police car. Shortly thereafter, having interviewed various witnesses, Haggard informed Oram he was under arrest for assaulting Johnson.

Based on the information Haggard and Alvarez possessed at the time they arrested Oram, the Court finds probable cause existed to believe that Oram

committed the offense of assault. At least two witnesses corroborated the information that Johnson provided to the Officers stating that Oram aggressively grabbed Johnson and threatened to kill him, and Johnson believed Oram might act on the threat. Furthermore, Haggard and Alvarez personally observed Oram continuing to attempt to physically confront Johnson or attack him. The totality of those circumstances provided probable cause for Haggard and Alvarez to believe that Oram made physical contact with Johnson in a provoking manner, and caused Johnson to have reasonable apprehension of bodily injury.

Oram does not materially dispute the order of events of the confrontation he had with Johnson, or the information Haggard and Alvarez possessed at the time. Oram concedes he grabbed Johnson's arms and threatened to harm Johnson. (Doc. 107 at 10 of 30.)

Instead, Oram disputes whether the events provided probable cause for his arrest. Oram's primary contention, consistent with the facts as discussed, is that Johnson grabbed or pushed Oram twice before Oram grabbed and threatened Johnson. Therefore, he argues Johnson committed an assault against Oram before any assault committed by Oram, and he suggests Haggard and Alvarez should have instead arrested Johnson for the assault, not Oram. Oram's argument suggests, in part, that he may have been acting in self-defense against Johnson's

physical aggression. But the law does not support Oram's theory that those circumstances preclude a finding of probable cause as to his own conduct.

It is not uncommon for law enforcement officers to encounter circumstances involving mutual combatants – two or more individuals who have allegedly assaulted one another. One suspect or both may each claim that he or she was acting in self defense by striking the other individual after having been first struck by the other individual. Nonetheless, disputes on the scene of an assault as to who struck who first, or whether a suspect asserts he or she acted in self-defense, has no affect on the analysis of whether probable cause exists to believe the suspect committed an assault. *See Yousefian v. City of Glendale*, 779 F.3d 1010, 1012, 1014 (9th Cir. 2015). Although in assessing the existence of probable cause a law enforcement "officer may not ignore exculpatory evidence that would 'negate a finding of probable cause[,] [...] [t]he mere existence of some evidence that could suggest self-defense does not negate probable cause." *Yousefian*, 779 F.3d at 1014. Even if a jury ultimately finds a suspect acted in self defense, or if the jury is not persuaded beyond a reasonable doubt that the suspect committed an offense, probable cause for the arrest could nonetheless still exist based on the information the officers possessed as of the time of the arrest. *Id*.

Under the circumstances of this case, and regardless of Johnson's prior

conduct towards Oram, based on the information Haggard and Alvarez possessed

at the time they arrested Oram – i.e. Oram's aggressive conduct grabbing Johnson,

threatening to kill Johnson, and Johnson's asserted resulting fear – the Court

concludes no reasonable jury could conclude there was no probable cause to arrest

Oram for assault. *See Yousefian*, 779 F.3d at 1014-15 (concluding summary

judgment finding probable cause is properly granted where the evidence

demonstrates no reasonable jury would conclude probable cause was lacking).

Thus, Haggard and Alvarez's summary judgment motion as to Oram's claim of

unlawful arrest in violation of the Fourth Amendment should be granted.[2]

## 2.    **Excessive Force**

Haggard and Alvarez move for summary judgment dismissing Oram's claim

alleging they used excessive force against him in violation of his Fourth

Amendment rights.  Oram asserts Haggard and Alvarez physically beat him once

---

[2]Oram further argues his arrest denied him his substantive due process right
to "bodily security" and his right to defend himself against Johnson.  He cites to
*Kennedy v. City of Ridgefield*, 439 F.3d 1055, 1061 (9th Cir. 2006) in support of
his argument.  However, *Kennedy* confirms only that the substantive due process
rights under the United States Constitution protect a citizen's liberty interest in
bodily security and impose liability against state actors who affirmatively place a
plaintiff in a position of danger at the hands of private violence.  *Id*.  Here there is
no evidence Haggard or Alvarez placed Oram in danger of being assaulted by
Johnson, and Oram's due process theory is irrelevant to the issue of whether the
Officers had probable cause to arrest Oram.

he was in their custody. But for the reasons stated, Oram has presented no evidence in support of his claim sufficient to survive summary judgment.

The Fourth Amendment protects against the unreasonable or excessive use of force by a law enforcement officer in physically restraining a citizen. *Graham v. Connor*, 490 U.S. 386, 395 (1989). Excessive force claims must be evaluated "under an objective reasonableness standard." *Espinosa v. City and County of San Francisco*, 598 F.3d 528, 537 (9th Cir. 2010). "The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham*, 490 U.S. at 396. The proper inquiry is "whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Id*. at 397.

In assessing whether the amount of force an officer used was constitutionally reasonable, the court "must 'balance the amount of force applied against the need for that force.'" *Bryan v. MacPherson*, 630 F.3d 805, 823-24 (9th Cir. 2010) (quoting *Meredith v. Erath*, 342 F.3d 1057, 1061 (9th Cir. 2003)). *See also Espinosa*, 598 F.3d at 537 (assessing (1) the amount of force used, and (2) the governmental interest in, or need for, the force, and then comparatively weighing those two factors).

In support of their summary judgment motion, Haggard and Alvarez each filed an affidavit in which they affirmatively state, through their sworn testimony, that neither one of them "punched, kicked, beat," or otherwise used unreasonable force against Oram. (Doc. 96 at ¶ 29; Doc. 97 at ¶ 28.)

In response, Oram asserts that in the course of Haggard and Alvarez's conduct in restraining him they struck or beat Oram with their hands or feet. In support of his assertion Oram relies upon what he represents is a written statement prepared by a purported witness, Sam Hayden. The referenced document is handwritten, but it is not signed by anyone, and the statement does not qualify as a sworn declaration or affidavit, nor as an unsworn declaration under penalty of perjury. *See* 28 U.S.C. 1746. "References to such unsworn statements are insufficient to generate a genuine dispute of fact" to survive summary judgment. *Jones v. Williams*, 791 F.3d 1023, 1032 (9th Cir. 2015).

Oram concedes he possesses no other evidence, other than what is contained in the handwritten statement purportedly prepared by Sam Hayden, suggesting that either Haggard or Alvarez beat or kicked him. (Doc. 94-1 at 14 of 37.) Instead, Oram asserts only that he should be given an opportunity to marshal further evidence and witness testimony that he could present at trial to show that the officers beat him. (Doc. 107 at 19 of 30.) But as the party opposing a summary

judgment motion Oram is obligated to present existing admissible evidentiary material or testimony that demonstrates there exists an actual genuine issue for trial – he cannot rely upon mere unsworn, inadmissible allegations with the hopes of being able to locate and present helpful evidence in the future. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Based on the foregoing, the Court concludes Oram has failed to present any evidentiary material that raises a genuine issue for trial as to whether Haggard and Alvarez used excessive force against him by hitting or kicking him. There simply is no admissible evidence that suggests the assault occurred. Absent genuine issues of material facts, and viewing all reasonable inferences of facts in the light most favorable to the non-moving party, summary judgment is properly granted in favor of a moving defendant if no reasonable juror could find from the undisputed facts in favor of the non-moving plaintiff. *Dietrich v. John Ascuaga's Nugget*, 548 F.3d 892, 901-02 (9th Cir. 2008). *See Luchtel v. Hagemann*, 623 F.3d 975, 980 (9th Cir. 2010) (affirming summary judgment in favor of defendant on plaintiff's claim of defendant's use of excessive force). Therefore, Haggard and Alvarez's motion should be granted.

### 3.   Equal Protection

Haggard and Alvarez move for summary judgment dismissing Oram's claim

alleging they violated his equal protection rights guaranteed under the Fourteenth Amendment. Oram's claim asserts that they treated him differently than Johnson who was similarly situated when they arrested Oram and they did not arrest Johnson. But for the reasons discussed, Oram's argument does not support an equal protection claim.

The Equal Protection Clause provides that no state shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. The clause essentially directs "that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Center*, 473 U.S. 432, 439 (1985). But the clause is limited in that it serves to prohibit a state actor from discriminating against an individual based on his or her membership in a protected class, or based on a particular classification in which the individual is placed. *The Committee Concerning Community Improvement v. City of Modesto*, 583 F.3d 690, 702-03 (9th Cir. 2009). Thus, in general, to state an equal protection claim under 42 U.S.C. § 1983 "a plaintiff must show that the defendants acted with an intent or purpose to discriminate against the plaintiff based upon membership in a protected class." *Thornton v. City of St. Helens*, 425 F.3d 1158, 1166 (9th Cir. 2005) (quoting *Lee v. City of Los Angeles*, 250 F.3d 668, 686 (9th Cir. 2001)). *City of Modesto*, 583 F.3d at 702-703 (requiring evidence of discriminatory motive or

intent).

Here Oram does not suggest Haggard and Alvarez discriminated against him based on his membership in a protected class – he does not assert he was discriminated against based on his race, religion, or gender.  Instead, Oram's agrument asserts that Haggard and Alvarez, without any rational basis, treated him differently than Johnson who was similarly situated.  Thus, in substance Oram argues his equal protection claim is predicated upon his status as a "class of one."

The equal protection clause can operate to protect individuals who constitute a class of one.  A successful class of one claim exists where an individual establishes he or she "has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment."  *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000).  *See also Gerhart v. Lake County, Montana*, 637 F.3d 1013, 1022 (9th Cir. 2011).

But a "class of one" equal protection claim is not cognizable with respect to all decisions made by state actors.  Those forms of state action which inherently involve "discretionary decisionmaking based on a vast array of subjective, individualized assessments[,]" are generally not amenable to the "class of one" equal protection analysis because in those situations the different treatment of similarly situated people "is an accepted consequence of the discretion granted" to

the state actor making the decision. *Engquist v. Oregon Department of Agriculture*, 553 U.S. 591, 603 (2008). Thus, for example, employment decisions relative to a public job in a state office are generally subjective and discretionary and are not subject to equal protection challenges. *Id*. at 604.

Similarly, in most situations law enforcement officers are charged with, and exercise, discretion to decide which individuals should be charged with a criminal offense, and which ones should not. *See Engquist*, 553 U.S. at 603-604 (analogizing with a hypothetical situation where a traffic officer issues speeding tickets to some speeders and not others). "[A]llowing an equal protection claim on the ground that a [speeding] ticket was given to one person and not others, even if for no discernible or articulable reason, would be incompatible with the discretion inherent in the challenged action. It is no proper challenge to what in its nature is a subjective, individualized decision that it was subjective and individualized." *Id.* at 604.

Consistent with *Engquist*, some courts have concluded that certain criminal investigative or discretionary decisions made by police officers "may not be attacked in a class-of-one equal protection claim." *Flowers v. City of Minneapolis, Minnesota*, 558 F.3d 794, 799-800 (8th Cir. 2009). *See also Quinn v. County of Monterey*, 2016 WL 4180565, *5-6 (N.D. Cal. 2016) (concluding law

enforcement officers' discretionary police investigative conduct is not subject to a class of one challenge). But the Ninth Circuit has not addressed the precise issue of whether a class-of-one equal protection claim is a viable theory for challenging a police officer's discretionary conduct. *See Mancini v. City of Cloverdale Police Department*, 2015 WL 4512274, *5 (N.D. Cal. 2015). Thus, the Court finds no clear, controlling Ninth Circuit law relative to the theory of liability.

Haggard and Alvarez's summary judgment motion, in part, asserts they are entitled to judgment under the doctrine of qualified immunity. For the reasons discussed, the Court concludes they are entitled to qualified immunity against liability for Oram's equal protection claim.

Qualified immunity renders individual state actors immune from suit "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Under the qualified immunity analysis the court considers whether the facts, taken in the light most favorable to the party asserting the injury, show the defendant's conduct violated a constitutional right. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). Additionally, the immunity analysis requires the court to consider whether the asserted constitutional right was clearly established. *Saucier*, 533 U.S. at 201. A right is clearly established if the

"contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Id*. 532 U.S. at 202. *See also Acosta v. City of Costa Mesa*, 718 F.3d 800, 824 (9th Cir. 2013). The court has "discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

As discussed, the Court finds that the law relative to a class-of-one equal protection claim and its application to discretionary decisions made by police officer is not clearly established. In particular, neither the decisional law in the Ninth Circuit, nor the supreme law declared by the United States Supreme Court has clearly established that a police officer exercising discretionary decisionmaking authority as to which suspect to charge and arrest for a criminal offense, and which suspect not to charge can be liable under the equal protection clause for such conduct when the officer's decision is not based on the plaintiff's membership in a protected class. Therefore, Haggard and Alvarez are entitled to qualified immunity as to Oram's equal protection claim.

### 4.    Conspiracy

Haggard and Alvarez move for summary judgment dismissing Oram's claim alleging they conspired against him to violate his constitutional rights. The Court

agrees the claim is subject to dismissal.

A civil conspiracy theory in a section 1983 action requires two or more individuals who, while acting in concert, intend to accomplish an unlawful objective for the purpose of harming the plaintiff and results in damage to the plaintiff. *Gilbrook v. City of Westminster*, 177 F.3d 839, 856 (9ᵗʰ Cir. 1999). To succeed a plaintiff must demonstrate that the conspiring parties "reached a unity of purpose or a common design and understanding, or a meeting of the minds in an unlawful arrangement" to violate a constitutional right. *Id*. (quotation and citation omitted). *See also Mendocino Environmental Center v. Mendocino County*, 192 F.3d 1283, 1301 (9ᵗʰ Cir. 1999).

Oram argues Haggard and Alvarez engaged in a conspiracy with Johnson in violation of 42 U.S.C. § 1985.[3] Oram argues the three individuals conspired to deprive him of his Fourth Amendment rights prohibiting the arrest of a citizen without probable cause and with excessive force, and to deprive him of his due process right to protect his own "bodily security" by defending himself against

---

[3]Although Oram cites to 42 U.S.C. § 1985 – a statute pertaining to conspiracies entitled "Conspiracy to interfere with civil rights" – he instead quotes the text of 42 U.S.C. § 1983 which does not directly pertain to conspiracies. (Doc. 107 at 20 of 30, and Doc. 108 at 7 of 19.) Oram does not discuss the substance and merits of the provisions of section 1985. Absent argument from Oram as to the application of section 1985, the Court concludes the provisions of section 1985 are inapplicable under the facts of this case.

Johnson's affirmative, physical conduct towards him. He contends Haggard, Alvarez and Johnson conspired to arrest him instead of arresting Johnson in violation of his equal protection rights. But Oram's theory fails because he has no evidence of any of the asserted constitutional violations.

A bare conspiracy is not itself a constitutional tort under section 1983. *Lacey v. Maricopa County*, 693 F.3d 896, 935 (9th Cir. 2012). Instead, there must always exist an underlying constitutional violation that is the subject of the conspiracy. *Id*. Indeed, a conspiracy cause of action requires both "(1) the existence of an express or implied agreement among the defendant officers to deprive him of his constitutional rights, and (2) an actual deprivation of those rights resulting from that agreement." *Avalos v. Baca*, 596 F.3d 583, 592 (9th Cir. 2010).

As discussed, Oram has failed to demonstrate that either Haggard or Alvarez violated Oram's constitutional rights. In the absence of an underlying violation of a federal or constitutional right actionable under 42 U.S.C. § 1983, a theory of liability alleging defendants conspired to violate a person's constitutional rights is not viable. *Dooley v. Reiss*, 736 F.2d 1392, 1395 (9th Cir. 1984). The failure of the underlying section 1983 claims precludes a conspiracy claim. *Cassettari v. Nevada County, California*, 824 F.2d 735, 739 (9th Cir. 1987).

Therefore, Haggard and Alvarez's summary judgment motion as to Oram's conspiracy claim should be granted.

### 5.    City of Dillon - Municipal Liability

The City of Dillon moves for summary judgment dismissing Oram's 42 U.S.C. § 1983 claims on the ground that there exists no evidence sufficient to support those claims of liability. Given the absence of any evidence of an underlying violation of Oram's constitutional rights, the Court agrees the City of Dillon cannot be held liable.

Local governmental entities such as the City of Dillon can be held liable under section 1983 (*Monell v. Dept. of Social Services*, 436 U.S. 658, 690 (1978)) only if "a policy, practice, or custom of the entity can be shown to be a moving force behind a violation of constitutional rights." *Dougherty v. City of Covina*, 654 F.3d 892, 900 (9th Cir. 2011). But "municipalities are only liable under Section 1983 if there is, at minimum, an underlying constitutional tort." *Johnson v. City of Seattle*, 474 F.3d 634, 638-39 (9th Cir. 2007) (citing *Monell*, 436 U.S. at 691).

As discussed, Oram has presented no evidence which suggests either Haggard or Alvarez violated his constitutional rights. And municipalities cannot be held liable under *Monell* where the court has concluded that no individual

police officer inflicted a constitutional injury upon the plaintiff. *Yousefian v. City of Glendale*, 779 F.3d 1010, 1012, 1014 (9th Cir. 2015). Consequently, Oram's claims against the City of Dillon are necessarily subject to dismissal.

## IV.   Conclusion

For the reasons discussed, IT IS RECOMMENDED that the City of Dillon, Haggard, and Alvarez's motions for summary judgment be GRANTED, and this action be DISMISSED.

IT IS FURTHER ORDERED that Defendant City of Dillon's Motions in Liming are DENIED, without prejudice, as moot, subject to the presiding United States District Judge's consideration of these findings and recommendations.

DATED this 29th day of November, 2016.

Jeremiah C. Lynch
United States Magistrate Judge